Public Employee Labor Relations Board
No. 2012-057

APPEAL OF LACONIA PATROLMAN ASSOCIATION
(New Hampshire Public Employee Labor Relations Board)

Argued: October 11, 2012
Opinion Issued: February 8, 2013

*Molan, Milner & Krupski, PLLC,* of Concord (*John S. Krupski* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Mark T. Broth* and *Laurel A. Van Buskirk* on the brief, and *Mr. Broth* orally), for the respondent.

BASSETT, J. The petitioner, Laconia Patrolman Association (Association), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) finding that the respondent, the Laconia Police Commission (Commission), did not commit certain unfair labor practices. We affirm.

The parties stipulated to, or the administrative record supports, the following facts. The Association represents police officers and detectives in the Laconia Police Department. The Association and the Commission had a collective bargaining agreement (CBA) that expired on June 30, 2010. Before the CBA expired, the Association and the Commission reached a tentative agreement on a successor CBA. During negotiations, Laconia's city manager informally reviewed the parties' proposals and recommended changes that she believed would improve their chances of obtaining the approval of the Laconia City Council (Council). The parties incorporated the city manager's suggestions into the tentative agreement, which was ratified by the parties.

The tentative agreement was presented to the Laconia City Council for approval on February 8, 2010. At that meeting, the city manager said that she could no longer support the tentative agreement. Several Council members expressed concern that the agreement granted increased leave and compensatory time to employees and would result in increased retirement payouts. The Council requested a new draft of the agreement, and the members went through each line of the agreement suggesting changes to specific provisions. The Council did not take a formal vote on the tentative agreement until October 2010 when it rejected the cost items contained therein.

On June 24, the Commission, knowing that the Council wanted it to reduce its budget by $35,000, nonetheless voted to grant step increases effective after the expiration of the CBA on July 1. In response, the Council voted on June 28 to remove $100,000 from the Commission's budget. Two days later, the Commission rescinded its previous vote.

The Association filed an unfair labor practice charge with the PELRB, alleging that the Commission violated RSA 273-A:3, II (2010) when it failed to ensure that the Council voted upon cost items within thirty days. It further alleged that the Council interfered with the negotiations and that the Commission's acquiescence to the Council's interference amounted to a failure to bargain in good faith. The Association also claimed that the Commission committed an unfair labor practice when it rescinded the step increases.

The case was submitted to the PELRB on stipulated facts and documentary evidence. The PELRB ruled that the Council's failure to vote on the cost items in the tentative agreement within thirty days, as required by RSA 273-A:3, II(c), did not constitute an unfair labor practice by the Commission. The PELRB stated that "the [Commission] cannot be held responsible for an unfair labor practice based on the conduct of the [Council], at least on the record presented for decision in this case." It found that the Commission had "no control or authority over whether the [Council] discharge[d] its statutory responsibility," and there was "no evidence suggesting that the Commission promoted or encouraged the [Council] to abdicate its duty to vote within the thirty day period."

To the extent that the Association argued that the Council interfered improperly with the Commission's bargaining power, the PELRB determined that such claims could not be brought against the Commission. It further stated that the record was insufficient to establish that the Council improperly usurped the Commission's bargaining authority.

The PELRB also ruled that the Commission did not commit an unfair labor practice when it rescinded the step increases. The PELRB determined that the Commission was not obligated to provide the post-CBA step

increases under the status quo doctrine. It further stated that the step increases were cost items that required the Council's approval, and, absent its approval, the Commission "retained the right to reverse its earlier vote and withhold" the step increases.

On appeal, the Association argues that the PELRB erred when it ruled that the Commission was not required to ensure that the Council voted on the tentative agreement within thirty days. It further argues that the PELRB erred when it failed to find that the Commission ceded its responsibilities to the Council. Finally, it argues that the Commission engaged in an unfair labor practice when it rescinded the step increases.

In reviewing a decision of the PELRB, "[w]e adhere to the standard of review set forth in RSA 541:13 (2007)." *Appeal of Town of Deerfield,* 162 N.H. 601, 602 (2011). "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable." RSA 541:13. "This court is not free to substitute its judgment on the wisdom of an administrative decision for that of the agency making the decision." *Appeal of Prof. Firefighters of E. Derry,* 138 N.H. 142, 145 (1993). "The PELRB's findings of fact are presumptively lawful and reasonable, and will not be disturbed if they are supported by the record." *Appeal of Town of Deerfield,* 162 N.H. at 602. "However, we act as the final arbiter of the meaning of the statute, and will set aside erroneous rulings of law." *Id.*

■ We first address whether the PELRB erred in ruling that the Commission was not responsible for ensuring that the Council voted on the tentative agreement's cost items within thirty days. Resolution of this issue requires that we interpret the language of RSA 273-A:3, II. In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. *Prof. Fire Fighters of Wolfeboro v. Town of Wolfeboro,* 164 N.H. 18, 20-21 (2012). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* at 21. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Frost v. Comm'r, N.H. Banking Dep't,* 163 N.H. 365, 375 (2011).

■ RSA 273-A:3, II(b) provides, in pertinent part, that "[o]nly cost items shall be submitted to the legislative body of the public employer for approval." RSA 273-A:3, II(c) provides, in pertinent part:

> If the public employer is a local political subdivision with a city or town council form of government cost items shall be submitted within 30 days to the city council or aldermen or to the town council for approval. Within 30 days of the receipt of the submission, the city council, aldermen, or the town council shall vote to accept or reject the cost items.

Because Laconia has a city council form of government, RSA 273-A:3, II(c) required the Council to vote upon the tentative agreement's cost items within thirty days after their submission. The Council failed, however, to comply with its statutory obligation.

Contrary to the Association's assertions, there is nothing in the plain language of RSA 273-A:3, II(b) or (c) that requires a public employer — here, the Commission — to ensure that the legislative body — here, the Council — votes within thirty days. To impose such a duty on the public employer would require adding words to the statute that the legislature did not see fit to include, and we decline to do so. *See Appeal of City of Franklin*, 137 N.H. 723, 727-28 (1993). Moreover, the PELRB found that the Commission had no control over whether the Council complied with its statutory duty and that there was "no evidence suggesting that the Commission promoted or encouraged the Council to abdicate its duty to vote within the 30 day period." Because the record supports the PELRB's factual finding, we will not disturb it. *See* RSA 541:13; *see also Appeal of Town of Deerfield*, 162 N.H. at 602.

We next address whether the PELRB erred when it found that the Commission did not cede to the Council its responsibilities as a public employer. The Association, in effect, argues that the evidence before the PELRB compelled it to find that the Commission "allowed the [Council] to take over the collective bargaining process." We disagree with the Association and uphold the PELRB's determination that the evidence failed to demonstrate that the Commission improperly allowed the Council to take over its bargaining role. Although the Association interprets the evidence differently than did the PELRB, we do not find the PELRB's interpretation to be clearly unreasonable or unlawful. *See* RSA 541:13.

Finally, we address whether the PELRB erred when it failed to conclude that the Commission committed an unfair labor practice when it rescinded its vote to grant step increases. The PELRB ruled that under the status quo doctrine, the Commission could lawfully rescind the step increases because they were cost items that required the Council's approval to become binding obligations and that approval was neither sought nor obtained. Although we conclude that this ruling was error, we nonetheless

uphold, on alternative grounds, the PELRB's ultimate determination that the Commission did not commit an unfair labor practice. *See Appeal of N.H. Dept. of Safety*, 155 N.H. 201, 203-04 (2007) ("When the Board bases its decision upon mistaken grounds, we will sustain it if there are valid alternative grounds to support it.").

██ Upon expiration of a collective bargaining agreement, but prior to the execution of a successor agreement, the parties must maintain the status quo, *i.e.*, the conditions under which the employees worked. *Appeal of Alton School Dist.*, 140 N.H. 303, 307 (1995); *Appeal of Milton School Dist.*, 137 N.H. 240, 245-47 (1993). The status quo doctrine "does not require payment of [step increases] after a CBA expires." *Appeal of Alton School Dist.*, 140 N.H. at 307 (quotation omitted). Therefore, a public employer retains the discretion, but not the obligation, to grant step increases during the status quo period. *See id.* at 307-08. Because the decision to grant the step increases was discretionary, the Commission remained free to rescind them. *Cf. id.*

The Association maintains that the Commission committed an unfair labor practice when it failed to submit the step increases to the Council. However, we reject this argument because, contrary to the ruling of the PELRB, the step increases were not cost items as defined by RSA 273-A:1, IV (2010). RSA 273-A:3, II(b) requires that "only cost items be submitted to the legislative body of the public employer for approval." A cost item is defined as "any benefit *acquired through collective bargaining*." RSA 273-A:1, IV (emphasis added). In *Appeal of Alton School Dist.*, 140 N.H. at 310-11, we held that a legislative body's vote to fund status quo step increases did not bind a public employer because those step increases were benefits not acquired through collective bargaining and, therefore, were not cost items within the meaning of the statute. Similarly, the post-CBA step increases here were not "benefits acquired through collective bargaining"; therefore, they were not cost items that needed to be submitted to the legislative body under RSA 273-A:3, II(c). Accordingly, because the step increases did not result from collective bargaining, the Commission was free to rescind them and had no obligation to submit them to the Council for approval. We, therefore, uphold the PELRB's ultimate determination that the Commission did not commit an unfair labor practice.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and LYNN, JJ., concurred.